# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF WISCONSIN



CLERK'S OFFICE
A TRUE COPY
Oct 15, 2021
s/ Daryl Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

ALL CRYPTO-CURRENCY, INCLUDING
APPROXIMATELY 509,752.59060959 TETHER,
25,461.0289 DOGECOIN, AND ANY OTHER CRYPTO-
CURRENCY ON DEPOSIT IN BINANCE ACCOUNT
USER ID #44911243, HELD IN THE NAME OF USMAN
MEHDI (DOB: XX/XX/1990) WITH AN ASSOCIATED
EMAIL ADDRESS OF PARATISH007@GMAIL.COM

Case Number: 21 MJ 187

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Scott Simons, being duly sworn depose and say:

I am a Task Force Officer assigned to the Drug Enforcement Administration, and have reason to believe that in the Northern District of California there is now certain property, namely, all crypto-currency, including approximately 509,752.59060959 Tether, 25,461.0289 Dogecoin, and any other crypto-currency on deposit in Binance account user ID #44911243, held in the name of Usman Mehdi (DOB: XX/XX/1990) with an associated email address of paratish007@gmail.com, that is civilly forfeitable under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C), and criminally forfeitable under 21 U.S.C. § 853, as proceeds of a conspiracy to distribute controlled substances committed in violation of 21 U.S.C. §§ 841(a)(1), 841(h), 843(c)(2)(A), and 846, and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and 21 U S C § 881(b), and for purposes of criminal forfeiture under 21 U S C § 853(f).

The application is based on these facts:

    ✓ Continued on the attached sheet.

    ❑ Delayed notice of _____ days (give exact ending date if more than 30 days:_____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

SCOTT SIMONS
(Affiliate)

Digitally signed by SCOTT
SIMONS (Affiliate)
Date: 2021.10.15 14:11:34 -05'00'

Signature of Affiant
Scott Simons, DEA

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone and email.

_10/15/2021 at 2:26 PM_
Date and time issued

at _Milwaukee, Wisconsin_
City and State

William E. Duffin, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEIZURE WARRANT

I, Scott Simons, being first duly sworn, hereby depose and state as follows:

## FUNDS TO BE SEIZED

1.      I submit this affidavit in support of an application for a warrant to seize approximately 509,752.59060959 Tether, 25,461.0289 Dogecoin, and any other crypto-currency on deposit in Binance account user ID #44911243, held in the name of USMAN MEHDI (DOB: XX/XX/1990) with an associated email address of paratish007@gmail.com ("Subject Account").

2.      For the reasons set forth below, I submit that probable cause exists to believe that approximately 509,752.59060959 Tether, 25,461.0289 Dogecoin, and any other crypto-currency on deposit in Binance account user ID #44911243 are:

- Proceeds of a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; distribution of a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); conspiracy to deliver, distribute, or dispense a controlled substance by means of the Internet, in violation of Title 21, United States Code, Sections 841(h), 843(c)(2)(A), and 846; and distribution of a controlled substance by means of the Internet, in violation of Title 21, United States Code, Section 843(c)(2)(A);

- Subject to civil forfeiture under Title 21, United States Code, Section 881(a)(6) and Title 18, United States Code, Section 981(a)(1)(C), and subject to criminal forfeiture under Title 21, United States Code, Section 853; and

- Subject to seizure via a civil seizure warrant under Title 18, United States Code, Section 981(b) and Title 21, United States Code, Section 881(b) and via a criminal seizure warrant under Title 21, United States Code, Section 853(f).

## BACKGROUND AND EXPERIENCE

3.      I am a Task Force Officer assigned to the Milwaukee District Office of the Drug Enforcement Administration (DEA) as a member of the Tactical Diversion Squad (TDS). I specialize in pharmaceutical investigations. I have worked full-time as a federal task force officer for the past 8 years and a full-time law enforcement officer with the Greenfield Police Department for the past 19 years. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

4.      During my tenure as a law enforcement officer, I have been involved in the investigation of drug traffickers in Milwaukee County, in the State of Wisconsin, across the United States, and internationally. I have received training in the investigation of drug trafficking, money laundering, and computer crimes. My training and experience includes the following:

   a.      Through informant interviews and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations finance, source, purchase, transport, and distribute controlled substances in Wisconsin, throughout the United States, and internationally.

   b.      I have used my training and experience to locate, identify, and seize multiple types of drugs, drug proceeds, and drug contraband.

   c.      I have conducted several investigations that have resulted in seizures of criminally derived property, including monetary instruments.

   d.      I know that controlled substances, drug paraphernalia, and drug proceeds are sent through the U.S. Postal Service system and other parcel services, such as FedEx and UPS, and I am familiar with many of the methods used by individuals who attempt to use mail services to illegally distribute controlled substances.

   e.      I have also relied upon informants to obtain controlled substances from drug traffickers and have made undercover purchases of controlled substances.

   f.      I am familiar with the language used over the telephone and other electronic communications to discuss drug trafficking and know that the language is often limited, guarded, and coded. I know the various code names used to describe controlled substances. I also know that drug traffickers often use electronic devices (such as computers and cellular phones), electronic communication services (such as email and messaging applications), and social media to facilitate these crimes.

2

g.     I know that drug traffickers often register phones, mailboxes, bank accounts, electronic communication services, and other instrumentalities of drug trafficking in the names of others, also known as nominees, to evade law enforcement.

h.     I know that drug traffickers often keep documents and records about the sourcing, ordering, sale, transportation, and distribution of controlled substances.

i.     I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase or title these assets to avoid scrutiny from law enforcement officials. I know that drug traffickers often secure drug proceeds at locations within their dominion and control, such as their residences, businesses, and storage facilities, and in safes or other secure containers.

j.     I know that drug traffickers often attempt to protect and conceal drug proceeds through money laundering, including but not limited to domestic and international banks, securities brokers, service professionals, such as attorneys and accountants, casinos, real estate, shell corporations, business fronts, and otherwise legitimate businesses which generate large quantities of currency. I know that it is common for drug traffickers to obtain, secrete, transfer, conceal, or spend drug proceeds, such as currency, financial instruments, precious metals, gemstones, jewelry, books, real estate, and vehicles. I know that it is also common for drug traffickers to maintain documents and records of these drug proceeds, such as bank records, passbooks, money drafts, transaction records, letters of credit, money orders, bank drafts, titles, ownership documents, cashier's checks, bank checks, safe deposit box keys, money wrappers, and other documents relating to the purchase of financial instruments or the transfer of funds. I know that drug traffickers often purchase or title assets in fictitious names, aliases, or the names of relatives, associates, or business entities to avoid detection of these assets by government agencies. I know that even though these assets are titled or purchased by nominees, the drug traffickers actually own, use, and exercise dominion and control over these assets. The aforementioned books, records, receipts, notes, ledgers, and other documents are often maintained where the traffickers have ready access. These may be stored in hard copy or soft copy on paper, computers, cellular devices, and other electronic media or electronic storage devices.

k.     Digital currency, also known as crypto-currency, is generally defined as an electronic-sourced unit of value, which can substitute for fiat currency. Digital currency exists entirely on the Internet and is not stored in any physical form. Digital currency is not issued by any government, bank, or company and is instead generated and controlled through computer software operating on a decentralized peer-to-peer network.

l.     Bitcoin is one type of digital currency. Bitcoin payments are recorded in a public ledger maintained by peer-to-peer verification and is, therefore, not maintained by a single administrator or entity. Individuals can acquire bitcoins either by "mining" or by purchasing Bitcoins from other individuals. An individual can "mine" for Bitcoins by allowing his computing power to verify and record the bitcoin payments into a public ledger. Individuals are rewarded for this by receiving newly-

3

created Bitcoins. An individual can send and receive Bitcoins through peer-to-peer digital transactions or by using a third-party broker. Such transactions can be performed on any type of computer.

m.      Bitcoins are stored on digital "wallets." A digital wallet essentially stores the access code that allows an individual to conduct bitcoin transactions on the public ledger. To access bitcoins on the public ledger, an individual must use a public address (or "public key") and a private address (or "private key"). The public address is similar to an account number while the private key is similar to an account password. Even though the public addresses of transactors are recorded on the public ledger, the true identities of the individuals or entities behind the public addresses are not recorded. If, however, a real individual or entity is linked to a public address, an investigator could determine what transactions were conducted by that individual or entity. Bitcoin transactions are, therefore, described as "pseudonymous," or partially anonymous.

n.      A Binance account has multiple "wallets," sub-accounts, or sub-wallets for holding different currency (e.g., U.S. dollars, Bitcoin, Dogecoin, TetherUS, Bitcoin Cash, Bitcoin Gold), but all of the sub-wallets are within one account. The funds can be readily moved from one currency to another currency within the same account. The value of the cryptocurrency relative to the U.S. dollar is constantly changing so the exact value is unknown until the funds are transferred out. Many Bitcoin companies allow the account holder to control the "key" for each wallet and that "key" is needed to transfer or remove funds. However, Binance controls the "key" to each of the wallets on its platform.

o.      Drug traffickers often use enhanced cryptocurrency, such as Bitcoin, to protect their identities, launder money, and conceal drug proceeds, because of the anonymity provided by cryptocurrency. Bitcoin is a decentralized digital currency without a central bank or single administrator. Payments are sent from user-to-user on the peer-to-peer bitcoin network without the need for intermediaries. These services add layers of anonymity to financial transactions to evade law enforcement.

p.      I know that drug traffickers often maintain large amounts of currency, including funds in readily accessible financial accounts, to finance their ongoing drug business. I know that those involved in drug trafficking or money laundering often keep records of their transactions. Because drug trafficking generates large sums of cash, drug traffickers often keep detailed records about the distribution of narcotics and the laundering of proceeds. I also know that drug trafficking and money laundering activities require the cooperation, association, and communication between and among a number of people. As a result, people who traffic in narcotics or launder money for such organizations possess documents that identify other members of their organization, such as telephone books, address books, handwritten notations, telephone bills, and documents containing lists of names and addresses of criminal associates. Such records also provide information about the identities of co-conspirators who launder money and traffick drugs. I also know that drug traffickers commonly maintain addresses or telephone numbers which reflect names, addresses, or telephone numbers of their drug trafficking and money

4

laundering associates in hard copy and soft copy on papers, books, computers, cellular devices, and other electronic media or electronic storage devices.

q.     I know that drug traffickers often use electronic devices, such as telephones, cellular devices, computers, and currency counting machines to generate, transfer, count, record, or store the information described above and conduct drug trafficking and money laundering. I am familiar with computers, cellular devices, pagers, and other electronic media or electronic storage devices and their uses by drug traffickers to communicate with suppliers, customers, co-conspirators, and fellow traffickers. These devices often contain evidence of illegal activities in the form of communication records, voicemail, email, text messages, video and audio clips, location information, business records, and transaction records. I know drug traffickers take, store, preserve, or maintain photographs or videos of themselves, their associates, their property, their drugs, and their drug proceeds. These traffickers usually maintain these photographs or videos on computers, cellular devices, and other electronic media or electronic storage devices. Based upon my training and experience, I know that computer hardware and software can be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime; and (2) the objects may have been used to collect and store information about crimes. I know the following information can be retrieved to show evidence of use of a computer or smartphone to further the drug trade: system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; computer media and any data contained within such media; operating system software, application or access program disks, manuals, books, brochures, or notes, computer access codes, user names, log files, configuration files, passwords, screen names, email addresses, IP addresses, and SIM cards.

r.     I have participated in numerous drug trafficking investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. This has led to evidence of the crimes under investigation and corroborated information already known or suspected by law enforcement. I have regularly used electronic evidence to find proof relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of suspects and conspirators.

s.     I have also participated in the execution of numerous premises search warrants and arrests, where controlled substances, firearms, drug paraphernalia, drug proceeds, electronic devices, and records relating drug trafficking and drug proceeds were seized.

5.     This affidavit is based upon my personal knowledge and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, I refer to case agents. Case agents

5

are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation.

6.      This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## STATUTORY BACKGROUND

7.      The Ryan Haight Online Pharmacy Consumer Protection Act of 2008, codified at Title 21, United States Code, Section 829, amended the Controlled Substances Act to address online pharmacies. No controlled substance that is a prescription drug as determined by the Federal Food, Drug and Cosmetic Act may be delivered, distributed, or dispensed by means of the Internet without a valid prescription, as required by Title 21, Code of Federal Regulations, Section 1306.09(a). *See* 21 U S C  §§ 829(e), 841(a)(1), 841(h), 843(c)(2)(A).

8.      According to Section 829, the term "valid prescription" means a prescription that is issued for a legitimate medical purpose in the usual course of professional practice by a practitioner who has conducted at least one in-person medical evaluation of the patient or a covering practitioner. The term "in-person medical evaluation" means a medical evaluation that is conducted with the patient in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other health professionals. The term "covering practitioner" means, with respect to the patient, a practitioner who conducts a medical evaluation (other than an in-person medical evaluation) at the request of a practitioner who has conducted at least one in-person medical evaluation of the patient or an evaluation of the patient through the practice of telemedicine within the previous 24 months and is temporarily unavailable to conduct the evaluation of the patient.

9.      The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 also added new provisions to prevent the illegal distribution of controlled substances by means of the Internet, including

6

registration requirements of online pharmacies, Internet pharmacy website disclosure information requirements, and prescription reporting requirements for online pharmacies. *See* 21 C.F.R. § 1301.11(b).

10.     Under Title 21, United States Code, Section 853(d):

> There is a rebuttable presumption at trial that any property of a person convicted of a felony under this subchapter or subchapter II is subject to forfeiture under this section if the United States establishes by a preponderance of the evidence that—
>
> (1)   such property was acquired by such person during the period of the violation of this subchapter or subchapter II or within a reasonable time after such period; and
>
> (2)   there was no likely source for such property other than the violation of this subchapter or subchapter II.
>
> 21 U.S.C. § 853(d)

11.     In addition, the Government may obtain a seizure warrant for up to the amount of criminal proceeds deposited into the account.

12.     Under 18 U.S.C. § 984, a court may order the forfeiture of funds in a bank account into which monies subject to forfeiture have been deposited, without the need to trace the funds currently in the account to the specific deposits that are subject to forfeiture, up to the amount of the funds subject to forfeiture that have been deposited into the account within the past one-year period.

13.     I submit that a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the funds for forfeiture because I have been advised of cases in which, even after a restraining order or similar process has been issued to financial institution, the funds sought to be restrained were not effectively restrained by the financial institution.  In my judgment, a seizure warrant would be the most effective way to assure the availability of the money sought to be seized for forfeiture by the accompanying seizure warrant.

## PROBABLE CAUSE

14.     In 2015, the Milwaukee District Office of the DEA initiated an investigation into a series of related internet pharmacies, which advertised controlled and non-controlled pharmaceuticals for sale

without requiring a prescription. During the course of the investigation in 2019, case agents identified a co-conspirator in Florida (hereinafter referred to as "SOI-1") and a co-conspirator in Texas (hereinafter referred to as "SOI-2"). These two co-conspirators were working together to receive bulk shipments of controlled pharmaceuticals and reship them to customers throughout the United States. An undercover agent in the Eastern District of Wisconsin purchased controlled pharmaceuticals numerous times from SOI-1 and SOI-2 between July 2019 and August 2020. Subsequent analysis of these suspected controlled substances by the DEA laboratory, identified controlled substances including heroin, methamphetamine, ketamine, tramadol, diazepam, alprazolam, and modafinil.

15.     In August 2020, case agents executed federal search warrants in Florida and Texas at the residences of SOI-1 and SOI-2. Case agents seized electronic devices and documents containing evidence identifying many of the drug suppliers and customers, communication related to the sale of controlled substances, and money laundering of drug proceeds. Case agents also seized approximately $100,000 in drug proceeds and different types of suspected controlled pharmaceuticals. Case agents have had the opportunity to interview SOI-1 and SOI-2 multiple times about the various drug suppliers and the circumstances around communication with the suppliers and drug payments to the suppliers. SOI-1 and SOI-2 identified multiple drug suppliers, email accounts, Bitcoin accounts, and WhatsApp accounts used by their drug suppliers to conduct drug transactions.

16.     SOI-1 and SOI-2 both identified a drug "broker" located in the United Kingdom, who is known to them as ████████████ and ████ ████████ and ████ said they are a brother/sister duo brokering drug orders. ████████ and ████ communicated about drug orders, drug payments, and drug shipments via WhatsApp. SOI-2 was the only one who communicated with ████████ and ████, but the drugs received from ████████ and ████ were supplied to the customers belonging to both SOI-1 and SOI-2. SOI-2 originally began communicating with them after SOI-2 left a post on the Indian website, IndiaMart, asking for various types of controlled pharmaceuticals.

Multiple types of controlled pharmaceuticals were purchased from ███████ and █████, received by SOI-2, and then reshipped to customers in the United States. SOI-1 and SOI-2 stated that the Adderall 30mg (which tested positive for methamphetamine) and Percocet 10mg (which tested positive for methamphetamine, heroin, tramadol, and caffeine) that SOI-1 and SOI-2 shipped to undercover case agents in the Eastern District of Wisconsin during controlled purchases were supplied by ███████ and █████. All of these purchases from ███████ and █████ were conducted by communicating via WhatsApp. All drug payments were made via Bitcoin to different Bitcoin addresses provided by ███████ and █████, via WhatsApp. SOI-2 believed that SOI-1 and SOI-2 began purchasing drugs from ██████████████ sometime in 2019.

17.     SOI-1 and SOI-2 stated that ███████ and █████ were believed to be the broker(s) taking the drug orders on behalf of a shipper located in the United Arab Emirates (UAE). Based on financial and shipping records reviewed by case agents, the drug parcels appear to be originating from Pakistan and then shipped through the UAE to the United States. SOI-1 and SOI-2 provided the identity of several other U.S. customers receiving drug shipments from ███████ and █████. SOI-1 and SOI-2 stated that on one occasion, a drug parcel arrived in Texas, and the drugs were damaged. SOI-2 told ███████ and █████ that SOI-2 was going to return the drug parcel. ███████ and █████ provided an address in London, United Kingdom and directed SOI-2 to ship the drugs to that location. Case agents reviewed emails and SOI-2's cell phone and were able to confirm these details regarding ███████ and █████, including their phone number.

18.     Case agents conducted multiple undercover purchases of the counterfeit Adderall (methamphetamine) tablets and counterfeit Percocet (heroin, methamphetamine, and tramadol) tablets through SOI-1 and SOI-2. These controlled substances were shipped from the UAE and coordinated by ███████████. Case agents reviewed records maintained by SOI-1 and SOI-2, identifying numerous other parcels they received from ████████████ and redistributed to U.S. customers.   Upon

9

combining the drugs purchased by the undercover with the additional drugs redistributed throughout the United States, case agents believe ████████ and ██████ are responsible for the distribution of at least 9 kilograms of methamphetamine mixture and 4 kilograms of heroin.

19.    SOI-1 and SOI-2 provided additional details related to other drug suppliers, and case agents were able to corroborate the information as true and accurate.

20.    SOI-1 and SOI-2 were able to provide Bitcoin addresses to case agents.  These Bitcoin addresses are where SOI-2 sent payments for the purchases of controlled substances from ███████████████.    Case agents were able to trace the funds to Bitcoin address █████████████████████████████ This Bitcoin address is part of a Paxful crypto currency account.

21.    On September 30, 2020, case agents received records related to this Bitcoin address used by ████████████ from Paxful, pursuant to a DEA administrative subpoena.  The records identified the account holder as the following:

- Name: ██████████████
- Date of Birth: ██████, 1999
- Phone: █████████████- confirmed (Pakistan number)
- Email: ████████████████- confirmed

The majority of the IP addresses for this Paxful account indicate the user is likely located in Pakistan. Paxful provided photographs of the account holder, photographs of an unidentified male,  and the account holder's Pakistan identification card.  This identification card identifies her father as ███████████.

22.    Case agents were able to trace funds leaving this Paxful account to a Local Bitcoins account which is located in Finland.  The funds were then transferred out of the Local Bitcoins account.

23.    On October 5, 2020, case agents received records from Finland's law enforcement authorities showing approximately $4.3 million USD has been received and subsequently transferred out

of the Local Bitcoins account. The current balance was approximately $50,000 USD. Case agents reviewed messages between the account holder and clients which show this account is being used to buy and sell Bitcoins for numerous clients, including the Paxful account linked to email address █████████████ which received drug payments. The Local Bitcoins account holder details are as follows:

- Name █████████████
- Date of Birth: ████████, 1991
- Email: █████████████████
- Address: Pakistan

24.     On November 24, 2020, case agents began communicating with █████████████ in an undercover capacity, via WhatsApp at the phone number acquired from SOI-2. The user of this phone number later said her name was █████████████ messaged case agents a list of approximately 23 different medications for sale, including Percocet 10mg and Adderall 30mg. These are the same medications SOI-1 and SOI-2 purchased from ████████ and reshipped to undercover agents. The undercover and ████████ discussed shipping, drug quantities, and pricing. ████████ stated that Bitcoin was the only accepted form of payment and provided additional details, which were consistent with the information provided by SOI-1 and SOI-2. The undercover informed ████████ that the undercover operated a domestic drug reshipping operation in the United States. ████████ solicited the undercover to receive bulk parcels from ████████ and reship the drugs to ████████ customers. The undercover informed ████████ that this was a possibility in the future, but first the undercover wished to become an established customer.

25.     On January 16, 2021, the undercover communicated with ████████, via WhatsApp, to conduct a controlled purchase of 500 tablets of Adderall 30mg (suspected to contain methamphetamine) and 500 tablets of Percocet 10mg (suspected to contain methamphetamine, heroin, tramadol, and caffeine). The undercover and ████████ discussed pricing and quantity, and ████████ said the minimum order size that

the shipper will ship is 1,000 tablets.  ███████  provided the undercover with a Paxful Bitcoin address where payment should be sent. The undercover did send Bitcoins worth approximately $3,100 to the target Bitcoin address, and ███████ confirmed that the payment was received.  The undercover received the shipment which contained approximately 1,000 Adderall tablets and no Percocet tablets.  This parcel was shipped from Pakistan through the United Arab Emirates.  The medications were sent to the DEA laboratory in Chicago, and the chemical analysis results showed the presence of methamphetamine and caffeine (394 gram mixture).

26.     On February 2, 2021, case agents received records from crypto-currency company Paxful, pursuant to a DEA administrative subpoena.  These records were related to the Bitcoin account the undercover sent drug payment to for the January 16, 2021 purchase.  The records identified the account holder as the following:

- Name: ██████████████████
- Date of Birth: ████████, 1976
- Phone: ███████████ – confirmed (Pakistan number)
- Email: ██████████████████ – confirmed.

The majority of the IP addresses for this Paxful account indicate the user is likely located in Pakistan. Paxful provided photographs of the account holder, the same unidentified male from the Paxful account SOI-2 sent payment to, and the account holder's Pakistan identification card.  This identification card identifies her husband as ██████████.  As a result, it is believed the account holder of this Paxful account is the mother of the Paxful account that SOI-2 was sending payments to.

27.     On April 18, 2021, the undercover communicated with ███████, via WhatsApp, to conduct a controlled purchase of 1,000 tablets of Adderall 30mg (suspected to contain methamphetamine). ███████ provided the undercover with a Paxful Bitcoin address where payment should be sent.  ███████ said she also included 120 alprazolam tablets. ███████ directed the undercover to keep 20 tablets and ship

the remaining 100 tablets to a U.S. customer of ████. The undercover did send Bitcoins worth approximately $3,100 to the target Bitcoin address, and ████ confirmed that the payment was received. This parcel was shipped, via FedEx, and was not cleared to be delivered once in the U.S. due to lacking proper documentation. Case agents had the parcel seized by the U.S. Customs and Border Protection (CBP) and transferred to case agents in Milwaukee. This parcel contained approximately 1,000 Adderall tablets and 120 alprazolam tablets. This parcel was shipped from Pakistan, through the United Arab Emirates. The medications were sent to the DEA laboratory in Chicago, and the analysis results showed the presence of methamphetamine and caffeine from the Adderall tablets (337 grams mixture) and the presence of alprazolam from the alprazolam tablets.

28.     On June 8, 2021, case agents received records from the crypto-currency company Paxful, pursuant to a DEA administrative subpoena. These records were related to the Bitcoin account that the undercover sent drug payment to for the April 18, 2021 purchase. The records identified the account holder as the following:

- Name: ████████████
- Date of Birth: ████████ 1976
- Phone: ████████ – confirmed (Pakistan number)
- Email: ████████████ – confirmed.

This is the same account to which case agents previously sent a drug payment. The majority of the IP addresses for this Paxful account indicate the user is likely located in Pakistan. Paxful provided photographs of the account holder, which was the same unidentified male from the Paxful account to which SOI-2 sent payment, and the account holder's Pakistan identification card.

29.     Case agents have had regular undercover communication with ████, via WhatsApp messages and voice calls. ████ is a female subject and said bulk drug parcels are shipped from the UAE to the United States. ████ stated there is a drop shipping organization located in the United

13

Kingdom where she claims to also be living with her brother. The UK drop shipper then ships smaller parcels to customers in the United States. ████ offered to ship the undercover parcels through the UK drop shipper instead of from the UAE, because ████ was under the impression the undercover did not receive the parcel seized by Customs and Border Protection (CBP) from the April 18, 2021 undercover purchase. ████ has sent the undercover dozens images of parcels and tracking records to prove that parcels are effectively being shipped from the UAE to UK and also from the UK to the United States.

30. Milwaukee case agents learned about a DEA Miami investigation into an Indian-based Dark Web vendor using the same UK drop shipping organization. This Dark Web vendor is being supplied by ████ through the UK drop shipper. Case agents reviewed the images provided by ████ of parcels being shipped from the UK to the United States. One of these parcels was being shipped to a customer (SOI-3) located in Coral Springs, Florida.

31. On June 24, 2021, case agents interviewed SOI-3 at SOI-3's residence in Coral Springs, Florida. SOI-3 said she purchased 30 Xanax 1mg tablets from the online pharmacy ████████████████, and the parcel arrived days ago. SOI-3 admitted to making multiple purchases from this online pharmacy over the past year. After placing the order through the website, SOI-3 received an email from ████████ from email address ████████████ to coordinate the payment for this drug purchase. SOI-3 turned over the 11 remaining tablets of suspected Xanax (a schedule IV controlled substance) to case agents. The tablets were in a blister pack which identified the tablets as Xanax/alprazolam 1mg. The suspected Xanax tablets were transferred to the DEA laboratory for analysis which is pending. Case agents reviewed USPS records and found the tracking of this Xanax drug parcel was checked from IP addresses located in Lahore, Pakistan.

32. Case agents reviewed the online pharmacy ████████████ and found the website sells the same medications being sold by ████.

Case 2:21-mj-00187-WED-SEAL Filed 07/15/21 Page 15 of 27 Document 1

33.     Case agents found that another parcel the broker, ███, identified to the undercover case agent was seized in Germany.  This parcel, shipped by DHL with tracking number ███266, was shipped on or about March 31, 2021 from Pakistan, through Germany, with a destination of the United Kingdom.  German authorities seized this parcel and found it contained 386 grams of counterfeit Adderall tablets, which tested positive for the presence of methamphetamine.

34.     Case agents reviewed data received from WhatsApp, pursuant to a pen register/trap and trace warrant authorized in the Eastern District of Wisconsin on May 6, 2021 by the Honorable Stephen C. Dries, United States Magistrate Judge. The data received was for ███ phone number.  Case agents learned that ███ is likely located in Pakistan based on IP address records and is in regular communication with phone numbers located in Pakistan, the United Kingdom, India, and the United Arab Emirates.

35.     On July 2, 2021, the undercover communicated with ███, via WhatsApp, to conduct a controlled purchase of 1,000 tablets of Adderall 30mg (suspected to contain methamphetamine) and also receive 1,000 tablets of Percocet 10mg (suspected to contain heroin, methamphetamine, and tramadol) free, because ███ believed the last drug parcel was seized by CBP.  ███ provided the undercover with a Paxful Bitcoin address where payment should be sent.  The undercover transferred Bitcoins worth approximately $3,100 to the target Bitcoin address, and ███ confirmed that the payment was received. ███ said the maximum size for a parcel shipped from the UK was 500 tablets so this order would arrive in 4 parcels.  The undercover received the first of the four parcels which was shipped, via USPS, from the UK.  This parcel contained approximately 537 Adderall tablets (suspected methamphetamine). The medications were sent to the DEA laboratory in Chicago, and the analysis results showed the presence of methamphetamine and caffeine from the Adderall tablets (216 gram mixture)

36.     Case agents coordinated with law enforcement authorities in the United Kingdom ("UK Authorities"), and the UK Authorities acquired video surveillance and interviewed a post office employee

in London, which showed that a Pakistani male shipped the drug parcel, purchased on July 2, 2021. As seen on video surveillance by UK Authorities, this Pakistani male withdrew currency from an ATM and then used this currency to pay for the shipping of the purchased drug parcel and approximately 18 additional suspected drug parcels to various recipients in the United States. UK Authorities identified the bank account holder of the account from which the funds were withdrawn from as ████████████, who was born in Pakistan and now lives in London, a short distance from this post office. Case agents compared the UK driver's license photograph of ████████████ with the Pakistani male who shipped the drug parcel to case agents, and case agents were able to positively confirm the shipper of the drug parcel is ████████████.

37. On July 8, 2021, case agents received records from the crypto-currency company Paxful, pursuant to a DEA administrative subpoena. These records are related to the Bitcoin account to which the undercover sent drug payment for the July 2, 2021 purchase. The records identified the account holder as the following:

- Name: ████████████
- Date of Birth: ████████ 1976
- Phone: ████████ – confirmed (Pakistan number)
- Email: ████████████ – confirmed.

This is the same account to which case agents previously sent drug payments.

38. On July 23, 2021, case agents received records from Yahoo/Oath Holdings Inc., pursuant to a DEA administrative subpoena, related to email address ████████████. This email address is used to process drug payments and provide drug parcel details to customers. The records showed the following account holder details:

- Name: ████████████
- Registration IP address: ████ 21.4 (located in Pakistan)

- Recovery email ██████████████ - verified
- Recovery phone: ████████████ – verified (Pakistan phone number).

39. On July 23, 2021, case agents interviewed a customer (SOI-4) in Milwaukee, Wisconsin. SOI-4 was the intended recipient of a drug parcel shipped from the drop shipper in the UK, which was identified in a photograph that █████ sent to an undercover agent. Case agents intercepted the parcel which was opened by Homeland Security Investigations investigators, and found multiple blister packs containing suspected Xanax tablets. SOI-4 stated that in April 2021, he purchased 180 tablets of Xanax and a quantity of Viagra from what he believed was the online pharmacy ██████████████. SOI-4 received multiple emails from █████████ from email address █████████████ coordinating the drug payment. SOI-4 later received an email from ██████████████ providing SOI-4 with the tracking number for the drug parcel which was subsequently seized by case agents. The suspected Xanax tablets were transferred to the DEA laboratory in Chicago for analysis, and the analysis results are pending.

40. UK Authorities acquired July 31, 2021 video surveillance of the same London post office, and UK Authorities again observed █████████████ ship 23 suspected drug parcels to various recipients in the United States. The majority of these parcels were delivered, but case agents were able to intercept and seize two of these parcels. One parcel was seized going to a customer in Stevens Point, Wisconsin and the other parcel was seized going to a customer in Tomball, Texas. Case agents, with the assistance from Homeland Security Investigations, opened these parcels and found suspected counterfeit Percocet tablets in both parcels. These medications were sent to the DEA laboratory for analysis and tested positive for the presence of heroin and tramadol.

41. Case agents later interviewed the customer in Stevens Point, Wisconsin, hereinafter referred to as Source of Information 5 (SOI-5). SOI-5 admitted to purchasing Ambien (a schedule IV controlled substance) at least two times from an online pharmacy. SOI-5 provided case agents with email

communication between SOI-5 and the online pharmacy ███████. SOI-5 made payment for the drug orders, via Bitcoin. On or about January 29, 2021, SOI-5 sent payment of $181.00 to private wallet Bitcoin address ██████████████████████. (Case agents were later directed to send drug payment to this same Bitcoin address.)

42.     On September 1, 2021, an undercover case agent placed an order of 30 tablets of Percocet (oxycodone) from the online pharmacy ████████████ located at ██████████████. Case agents were directed to make payment, via Western Union, to a subject in the Philippines. The undercover case agent communicated with the customer service employee by phone and email and was told the online pharmacy ships drug parcels from both the United Kingdom and the Philippines. On September 14, 2021, the undercover case agent received an email containing the tracking number for the drug parcel. This email was received from ██████████████████ Furthermore, the email address ████████████ was copied on this email providing the tracking number of the drug parcel.

43.     On September 11, 2021, UK Authorities seized a parcel from Pakistan to the United Kingdom. This parcel contained 900 grams of suspected counterfeit Adderall tablets. UK Authorities believe this parcel was intended for ███████████ based on linking a phone number on the drug parcel to ██████████████.

44.     On September 15, 2021, an undercover case agent placed an order of 30 tablets of Adderall and 30 tablets of Xanax (alprazolam) from the online pharmacy ████████████ located at ██████████████ Case agents were directed to make payment of $349.00, via Bitcoin, to private wallet Bitcoin address ██████████████████. (This is the same private wallet Bitcoin address to which SOI-5 sent the drug payment.) The undercover case agent communicated with the customer service employee by phone and email and was told the online pharmacy ships drug parcels from the United Kingdom, the Philippines, and from within the United States. The undercover

18

agent was informed the Xanax would be shipped from the United Kingdom, and the Adderall would be shipped from the Philippines. The undercover agent was later provided with a tracking number originating in the United Kingdom, and further investigation revealed it was shipped from a post office located in London. Furthermore, the undercover case agent received an email from the online pharmacy ██████ which sells the same medications that █████████████ offers for sale. The undercover agent was informed by the customer service representative that both online pharmacies are associated with one another. Case agents did receive the parcel from London which contained blister packs containing 30 tablets. The blister packs purported the tablets to be alprazolam. This medication was sent to the DEA laboratory, and the chemical analysis is pending.

45.     Case agents learned that DEA Fort Worth agents were previously investigating the online pharmacy ██████. During that investigation, case agents communicated with a customer service representative in an undercover capacity. The undercover agent was able to solicit details about drug parcels being shipped in the United States, and multiple drug parcel seizures were executed. During an undercover conversation with the customer service representative on January 21, 2021, the undercover agent was provided the same private wallet Bitcoin address ████████████████████████ to send drug payment for the purchase of Adderall. The undercover agent did not follow through with the drug purchase.

46.     Case agents were able to trace funds leaving this private wallet Bitcoin address ██████████████████████ receiving drug payments since at least January 2021 to present date. Funds were traced to various accounts such as ████████████ same Paxful Bitcoin account, but recently a substantial amount has been transferred to Binance Bitcoin address ████████████████████. The following are the recent transactions from the private wallet Bitcoin address receiving drug payments to this Binance Bitcoin address "Subject Account":

| Exchange/Entity | Date_Time | Receiving Address | Amount | USD Value |
|---|---|---|---|---|
| Binance.com | 8/25/2021 18:52 | ████████████████████ | 0.30718268 | 15021.316 |

| | | | | |
|---|---|---|---|---|
| Binance.com | 8/25/2021 16:55 | | 0.0020517 | 97.8467 |
| Binance.com | 8/4/2021 12:11 | | 0.41622406 | 15862.4571 |
| Binance.com | 8/4/2021 11:22 | | 0.00366367 | 138.7635 |

47.     On September 22, 2021, case agents received records from Binance pursuant to a DEA administrative subpoena.  The records identified the account holder as the following:

- Name: USMAN MEHDI

- DOB: April 26, 1990

- Phone number: +971-589325007

- Bank account: Emirates NBD Bank PJSC.

48.     Binance records included IP addresses used to access this Binance Subject Account, and the IP addresses are primarily located in the United Arab Emirates and Pakistan.  The person who created the Binance Subject Account identified themselves with a Pakistan National Identification Card as USMAN MEHDI.  Based on the account holder details and other account records, it appears USMAN MEHDI, a Pakistani National, is residing in the United Arab Emirates.  Case agents know based on tracking of drug parcels and from undercover communication with the drug broker █████, that drug parcels originate in Pakistan and ship through the United Arab Emirates before shipping to the United States or the United Kingdom.

49.     Case agents reviewed the incoming and outgoing funds from this Binance Subject Account. This account was created on or about July 27, 2020.  Regular activity did not begin until April 12, 2021. Since April 12, 2021, this Binance account has received substantial amount of funds every couple days, at times multiples time in a day from the same sending Bitcoin address, and on one occasion received funds five times in one day.  The forms of crypto-currency being deposited into the Binance Subject Account are Bitcoin (BTC), Tether (USDT), and Tron (TRX).  Records show funds have been transferring out of this Binance Subject Account beginning on July 27, 2020.  Funds are transferred out every few days, on occasion daily, and on three occasions funds were transferred out seven times in one day.  The

20

form of crypto-currency being transferred out of the Binance Subject Account are Tether (USDT), Ethereum (ETH), Tron (TRX), and Bitcoin (BTC).

50.     Case agents found an abundance of the crypto-currency Tether (USDT) being transferred into this Binance Subject Account, and shortly thereafter, being transferred out. Since May 2021, approximately $14.6 million USD of Tether has been transferred into and out of this Binance Subject Account. The Tether has been received from multiple private wallets. The Tether is transferred out of the Binance Subject Account and into other private wallets. Sometimes the Tether is moved through even another private wallet before being transferred into one of a series of other Binance accounts. The Tether is then transferred out of those Binance accounts into various additional private wallets. Including all of the related private wallets and Binance accounts, case agents have identified nearly $2 billion which has been transferred through these private wallets and Binance accounts in the past approximately two to three years.

51.     Case agents are only able to trace just under half of all the Tether. Tether can be transferred using the Ethereum blockchain, which has tools available to case agents and investigators to trace these funds. Tether can also be transferred using the TRON (TRX) blockchain, which does not allow these same tools used by case agents to trace the funds.  In the case of this Binance Subject Account, the user is transferring the majority of the Tether using the TRON blockchain, resulting in the inability to trace these funds.  Case agents also believe that the user transferring funds from a traceable Binance account to a private wallet, back to another Binance account is another layer of attempting to disguise funds.

52.     Sophisticated drug traffickers and money launderers prefer to use private crypto-currency wallets, which are stored on personal devices such as a laptop computer, cellular telephone, or thumb drive. This is preferred for the security of these funds since the funds are physically stored in the device (private wallet).  Eventually, the funds need to reach a crypto-currency exchange which is similar to a "bank for crypto-currency."  This is required by the drug trafficker/money launderer because the crypto-

21

currency exchange is linked to a bank account, and this is how the funds are commonly exchanged from crypto-currency to fiat currency. Although crypto-currency can often be traced by law enforcement through private wallets and crypto-currency exchanges, law enforcement cannot locate or seize a private wallet stored on a personal device, unless that personal device is in the physical possession of law enforcement. As a result, criminal proceeds in the form of crypto-currency are regularly transferred between private wallets and crypto-currency exchanges to disguise the funds, and it is often times as the funds funnel through the crypto-currency exchange, such as this Binance Subject Account, that law enforcement can seize the funds with the cooperation of the crypto-currency exchange "bank for cryptocurrency."

53.     Case agents communicated with Binance staff and learned they have the ability to block a user's ability to withdraw funds from an account, but still allow funds to be deposited into said Binance account. On September 29, 2021, case agents requested Binance block only the user's ability to withdraw funds from this Binance Subject Account for a period of 14 days. Case agents believed this was necessary to be able to seize the drug proceeds, due to the account user regularly transferring the funds out of the "Subject Account."

54.     On September 30, 2021, case agents were notified by Binance that withdrawals from this Binance account was blocked. The balance of the Binance Subject Account at the time withdrawals were blocked was approximately $55,000 which primarily consisted of Bitcoin and Dogecoin. The full account balance was as follows:

Case 2:21-mj-01087-DUTY *SEALED* Document 1 Filed 10/15/21 Page 23 of 27 Document 1

| Currency name | Currency code | All positions | Available positions | In withdrawal | Pending Order | BTC equivalent |
|---|---|---|---|---|---|---|
| BTC | Bitcoin | 0.999 | 0 | 0 | 0.999 | 0.999 |
| DOGE | Dogecoin | 25461.0289 | 0.0289 | 0 | 25461 | 0.11864839 |
| USDT | TetherUS | 896.52636315 | 896.52636315 | 0 | 0 | 0.02055735 |
| BNB | BNB | 0.00320469 | 0.00320469 | 0 | 0 | 0.0000279 |
| TRX | TRON | 1.5e-7 | 1.5e-7 | 0 | 0 | 0 |
| BTT | BitTorrent | 0.000002 | 0.000002 | 0 | 0 | 0 |

55.     On October 8, 2021, case agents communicated with Binance.  Case agents received current account details and the current balance at this time was approximately $516,055.84.  Since the withdrawals were blocked on September 30, 2021, case agents noted a few transactions.  On October 1, 2021, there was one deposit of 406,429.790006 Tether ($406,429.79) and one deposit of 1.00 Bitcoin (approximately $47,932).  On October 8, 2021, the user transferred all the Bitcoin into Tether.  Case agents believe this was done because the user realized he was unable to withdraw funds so he transferred the Bitcoin into a stable crypto-currency which is Tether.  Case agents know that 1 Tether always equals $1 USD and does not fluctuate in value like Bitcoin does.

56.     As of October 8, 2021, this Binance Subject Account has a current balance of approximately $516,055.84.   This is made up of primarily Tether ($509,752.59) and Dogecoin ($6,220.13), but other crypto-currencies make up this account at an insignificant amount.  The complete account balance is as follows:

| Asset Ticker | Asset Name | Total Position | Estimated BTC Value | Estimated USD Value |
|---|---|---|---|---|
| BNB | BNB | 0.00320469 | 0.00002484916626 | $1.34 |
| BTT | BitTorrent | 0.000002 | 0.0000000000001382 | $0.00 |
| DOGE | Dogecoin | 25461.0289 | 0.115083850628 | $6,220.13 |
| TRX | TRON | 0.00000015 | 0.00000000000027 | $0.00 |
| USDT | TetherUS | 509752.59060959 | 9.3131798304372093 | $509,752.59 |

57.     On October 8, 2021, case agents requested that Binance completely block all access to the Subject Account by the user.  Although the majority of the suspected drug proceeds is in the form of

23

Tether and Dogecoin, case agents request authorization to seize all funds contained within the Subject Account because the user could have again transferred the funds from one crypto-currency to another prior to Binance restricting the user's access to the Subject Account.

58.     Case agents have traced a quantity of Bitcoin which was worth at the time approximately $31,120.38 USD from the private wallet Bitcoin address being used by ███████████████ and ███████ to receive drug payments to this Binance Subject Account. Case agents know that the value of Bitcoin is constantly fluctuating, and unlike traditional stocks, crypto-currency values continue to fluctuate 24 hours a day.  The user of this Binance Subject Account then exchanges received crypto-currency from one currency to another.  Based on the contantly fluctuating values and the fact the user is exchanging the value from one currency to another and back again, it is unknown what the value of just the $31,120.38 worth of Bitcoins transferred from the online pharmacy private wallet Bitcoin address is currently worth at this time.  For these reasons, and for the fact that drug proceeds are co-mingled, being exchanged with other crypto-currency, and this account is being used to further the drug trafficking organization, case agents request a warrant to seize approximately 509,752.59060959 Tether, 25,461.0289 Dogecoin, and any other crypto-currency on deposit in Binance account user ID #44911243, held in the name of USMAN MEHDI (DOB: XX/XX/1990) with an associated email address of paratish007@gmail.com ("Subject Account").

59.     Case agents believe that SOI-1 is a reliable witness as SOI-1 has provided a statement against SOI-1's own penal interest, and information provided by SOI-1 has been independently corroborated by case agents. SOI-1's criminal history consists of misdemeanor assault and misdemeanor menacing. SOI-1 has no prior felony convictions. SOI-1 has provided information in other investigations, and that information was found to be accurate and reliable.  SOI-1 is cooperating with law enforcement for potential consideration for his federal felony drug distribution arrest, which remains pending.

60.     Case agents believe that SOI-2 is a reliable witness as SOI-2 has provided a statement against SOI-2's own penal interest, and information provided by SOI-2 has been independently corroborated by case agents. SOI-2's criminal history consists of one prior federal felony conviction for conspiracy to commit health care fraud, mail and wire fraud, money laundering, and illegal monetary transaction, conspiracy to distribute controlled substances, and mail fraud. SOI-2 may have been arrested for forgery in the 1980s. SOI-2 has provided information in other investigations, and that information was found to be accurate and reliable. SOI-2 is cooperating with law enforcement for potential consideration in his new federal felony drug conspiracy and drug distribution case, and any revocation sentence for his supervised release in the prior case.

61.     Case agents believe that SOI-3 is a reliable witness as SOI-3 has provided a statement against SOI-3's own penal interest, and information provided by SOI-3 has been independently corroborated by case agents. SOI-3 provided case agents with documents further corroborating SOI-3's statement. SOI-3 has no criminal history. SOI-3 is not facing criminal prosecution and is cooperating with law enforcement to simply aid in the investigation.

62.     Case agents believe that SOI-4 is a reliable witness as SOI-4 has provided a statement against SOI-4's own penal interest, and information provided by SOI-4 has been independently corroborated by case agents. SOI-4 provided case agents with documents further corroborating SOI-4's statement. SOI-4 has no criminal history. SOI-4 is not facing criminal prosecution and is cooperating with law enforcement to simply aid in the investigation.

63.     Case agents believe that SOI-5 is a reliable witness as SOI-5 has provided a statement against SOI-5's own penal interest, and information provided by SOI-5 has been independently corroborated by case agents. SOI-5 provided case agents with documents further corroborating SOI-5's statement. SOI-5 has no criminal history. SOI-5 is not facing criminal prosecution and is cooperating with law enforcement to simply aid in the investigation.

25

64.     As of October 8, 2021, Binance account user ID #44911243, which contains 509,752.59060959 Tether, 25,461.0289 Dogecoin, and other minimally valued crypto-currency wallets in the name of USMAN MEHDI with an associated email address of paratish007@gmail.com, is valued at approximately $516,055.84 USD.

**<u>CONCLUSION</u>**

65.     Based on the facts and circumstances set forth in this affidavit, I submit that there exists probable cause to believe that approximately **509,752.59060959 Tether, 25,461.0289 Dogecoin, and any other crypto-currency on deposit in Binance account user ID #44911243**, held in the name of USMAN MEHDI (DOB: XX/XX/1990) with an associated email address of paratish007@gmail.com, are:

a. Proceeds of a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; distribution of a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); conspiracy to deliver, distribute, or dispense a controlled substance by means of the Internet, in violation of Title 21, United States Code, Sections 841(h), 843(c)(2)(A), and 846; and distribution of a controlled substance by means of the Internet, in violation of Title 21, United States Code, Section 843(c)(2)(A);

b. Subject to civil forfeiture under Title 21, United States Code, Section 881(a)(6) and Title 18, United States Code, Section 981(a)(1)(C), and subject to criminal forfeiture under Title 21, United States Code, Section 853; and

c. Subject to seizure via a civil seizure warrant under Title 18, United States Code, Section 981(b) and Title 21, United States Code, Section 881(b) and via a criminal seizure warrant under Title 21, United States Code, Section 853(f).



CLERK'S OFFICE
A TRUE COPY
Oct 15, 2021
s/ DarylOlszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
## for the
### EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
*(Address or brief description of property or premises to be seized)*

| | |
|---|---|
| ALL CRYPTO-CURRENCY, INCLUDING APPROXIMATELY 509,752.59060959 TETHER, 25,461.0289 DOGECOIN, AND ANY OTHER CRYPTO-CURRENCY ON DEPOSIT IN BINANCE ACCOUNT USER ID #44911243, HELD IN THE NAME OF USMAN MEHDI (DOB: XX/XX/1990) WITH AN ASSOCIATED EMAIL ADDRESS OF PARATISH007@GMAIL.COM | Case Number:    21    MJ    187 |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

**TO:**    **SCOTT SIMONS, a Task Force Officer assigned to the Drug Enforcement Administration, and any Authorized Officer of the United States**.

An application by a federal law enforcement officer or an attorney for the government requests that certain property be seized as being subject to forfeiture to the United States of America. The property is described as follows:

All crypto-currency, including approximately 509,752.59060959 Tether, 25,461.0289 Dogecoin, and any other crypto-currency on deposit in Binance account user ID #44911243, held in the name of Usman Mehdi (DOB: XX/XX/1990) with an associated email address of paratish007@gmail.com

I find that the affidavit and any recorded testimony establish probable cause to seize the property.

**YOU ARE HEREBY COMMANDED** to search on or before    October 29       , 2021
*(not to exceed 14 days)*

☒ in the daytime – 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night, as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to United States Magistrate Judge William E. Duffin.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. §2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person, who, or whose property, will be searched or seized *(check the appropriate box)*    ☐ for _____ days. *(not to exceed 30)*
                      ☐ until, the facts justifying, the later specific date

Date and time issued    10/15/ , 2021;   2:25 p.m.

*William E. Duffin*
                                          *Judge's signature*

City and state: Milwaukee, Wisconsin

                          THE HONORABLE WILLIAM E. DUFFIN
                          United States Magistrate Judge
                          *Name & Title of Judicial Officer*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of:

Inventory of the property taken:

| Certification |
|---|

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

                                                           _____

*Executing officer's signature*

                                                           _____

*Printed name and title*